IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

TAYLOR L. YOSSICK-CAVE,                  :
                                         :      C.A. No: K14C-01-002 RBY
            Plaintiff,                   :
                                         :
_____                                :
                                         :
      v.                                 :
                                         :
LOWELL S. LITTEN, JR., individually,     :
and in his official capacity, CHESAPEAKE :
CONFERENCE ASSOCIATION OF                :
SEVENTH-DAY ADVENTISTS, a                :
Delaware Corporation, a/k/a DOVER        :
FIRST SEVENTH-DAY ADVENTIST              :
CHURCH and f/k/a EASTERN SHORE           :
JUNIOR ACADEMY, COLUMBIA                 :
UNION CONFERENCE ASSOCIATION             :
OF SEVENTH-DAY ADVENTISTS, a             :
District of Columbia Corporation,        :
                                         :
            Defendants.                  :

_____

*Submitted: January 12, 2015*
*Decided: February 5, 2015*

***Upon Consideration of Defendant Lowell S. Litten, Jr.'s***
***Motion to Dismiss***
**DENIED**

**ORDER**

Scott E. Chambers, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for
Plaintiff.

Lowell S. Litten, Jr., *pro se*.

Benjamin C. Wetzel, III, Esquire, Wetzel & Associates, P.A., Wilmington,
Delaware for Defendants Chesapeake Conference Association of Seventh-Day
Adventists and Columbia Union Conference Association of Seventh-Day
Adventists.

Young, J.

## SUMMARY

Taylor Yossick-Cave ("Plaintiff") filed a civil suit sounding in tort, breach of contract, and negligence, among other theories, against Lowell S. R. Litten, Jr. ("Defendant"),[1] Chesapeake Conference Association of Seventh-Day Adventists ("Chesapeake"), and Columbia Union Conference Association of Seventh-Day Adventists ("Columbia"). Defendant is currently incarcerated in Maryland, having been found guilty of sexually abusing Plaintiff in a criminal trial. Plaintiff's current civil action stems from these same events.

Defendant moves to dismiss Plaintiff's Complaint under three theories: 1) his name is improperly listed in the pleadings; 2) he was not served properly; and 3) the Court lacks jurisdiction over him. As regards the first contention, the Court finds that there has been no prejudice to Defendant by this minor spelling error. Moreover, Plaintiff, when alerted of this matter, promptly amended her pleadings. With respect to Defendant's second theory, a review of the docket reveals that service was proper under 10 *Del. C*. §3104. Finally, the Court holds that personal jurisdiction over Defendant is appropriate, given the nature of the allegations in Plaintiff's Complaint. Defendant is said to have committed a tort in Delaware. Further, due process considerations are not offended by the prosecution of this suit in the State. Therefore, Defendant's motion is **DENIED**.

## FACTS AND PROCEDURES

Plaintiff and her family were members of Dover First Seventh-Day Adventists Church ("Dover First") located in Delaware, which is operated by Chesapeake.

---

[1] The Court uses the Defendant's name as reflected in Plaintiff's amended pleading.

According to Plaintiff, Chesapeake actively recruited congregants to attend its parochial school, Eastern Shore Junior Academy ("Eastern Shore"), located in Maryland. Defendant was employed by Chesapeake, working at the school as a principal, teacher, and coach. Eastern Shore and Defendant are further said to have been under the supervision of Columbia. Plaintiff enrolled at Eastern Shore in or about 2002.

It was following Plaintiff's enrollment that the alleged abuse began. While Plaintiff was in the fifth grade, aged eleven years, Defendant purportedly began his serial sexual abuse. Plaintiff alleges that their encounters escalated over a year period, continuing on into her twelfth year. Defendant is alleged to have violated Plaintiff in both the states of Maryland and Delaware.

As a result of the purported abuse, Defendant was criminally tried, and sentenced to consecutive prison terms in Maryland and in Delaware. Defendant is currently incarcerated in a Maryland correctional facility, located in Cumberland. At the completion of his term in Maryland, Defendant will begin serving his Delaware sentence. The occurrences, leading to Defendant's conviction in Maryland and in Delaware, form the basis of Plaintiff's present civil suit.

## DISCUSSION[2]

The Defendant, proceeding *pro se*, makes, essentially, three arguments in support of his Motion to Dismiss: (1) the complaint included a misspelling of his

---

[2] By letter dated, January 7, 2015, Counsel for Chesapeake and Columbia has indicated they have adopted the arguments found in Plaintiff's opposition to Defendant's motion to dismiss.

name; (2) service of the complaint was improper; and (3) the court lacks jurisdiction[3] With respect to the third contention, the Court understands Defendant to argue that the Court lacks *personal* jurisdiction over him. The Court addresses each argument in turn.

Without citing any relevant case law, Defendant argues that Plaintiff's Complaint should be dismissed because his name, as it appears on the pleading, is incorrect. Specifically, Defendant avers that his proper name is "Lowell S. R. Litten, Jr.," not "Lowell S. Litten Jr.," as listed on the Complaint. Defendant raises the concern that one of his family members may be mistakenly brought into this suit, as a result. The Court finds no legitimate reason for this anxiety. As Plaintiff accurately points out, there has been no indication that the minor error in the litigation caption, has resulted in an incorrect individual's having been brought into this suit. Furthermore, Plaintiff has addressed this scrivener's error by filing an amended pleading with Defendant's purportedly proper name. Any fears of future mistaken service, or like error, should be quelled by this correction.

The Court next considers Defendant's argument concerning improper service. Once more, Defendant presents a naked assertion, without any support, stating simply that service of process was not proper. As an out of state resident,[4] service upon

---

[3] *See Gsell v. Unclaimed Freight*, 1995 WL 339026, at *1, n. 2 (Del. Super. Ct. May 3, 1995) (where appellant was *pro se* "[t]he Court has attempted to characterize [Appellant's] position as recognizable legal argument").

[4] Plaintiff is currently incarcerated in Cumberland, Maryland.

Defendant is controlled by 10 *Del. C.* § 3104.[5] This Court's review of the docket indicates that Defendant was properly served pursuant to 10 *Del. C.* § 3104(d)(3), which provides that service may be accomplished "by any form of mail addressed to a person to be served and requiring a signed receipt." 10 *Del. C.* § 3104(e) further permits "proof of service" to be "made by affidavit of the individual who made the service...[w]hen service is made by mail, proof of service shall include a signed receipt by the addressee..." Finally, 10 *Del. C.* § 3104(h)(2) indicates that this return receipt "shall constitute presumptive evidence that the noticed mailed was received by defendant..."

Transaction No. 54865773 of the docket consists of the signed affidavit of Scott E. Chambers, Esq., counsel for Plaintiff, indicating that service was made upon Defendant, and that the return receipt was signed. Included as Exhibit A to this affidavit is a copy of the return receipt, complete with Defendant's signature. All events, thus far, manifest Plaintiff's proper service upon Defendant, as per the statutory requirements. Moreover, as 10 *Del. C.* § 3104(h)(2) provides, the return receipt appearing as Exhibit A is "presumptive evidence" of the mailing and receipt of service by Defendant. The Court is satisfied that Defendant was served adequately.

Finally, the Court turns to Defendant's argument that jurisdiction is lacking. As an initial matter, the Court considers Defendant's contention to be limited to personal jurisdiction, as Defendant's motion states "Delaware has no jurisdiction over the Defendant," as well as "Delaware has no jurisdiction over the location of events

---

[5] *See generally, Maldonado v. Matthews*, 2010 WL 663723, at *1 (Del. Super. Ct. Feb. 23, 2010).

alleged by Plaintiff."[6] These two statements appear to be concerned with jurisdictional geography, which this Court finds refers to the location of the parties – specifically that of Defendant. In any event, to the extent the Defendant means also to challenge the Court's subject matter jurisdiction, the Court has the authority to hear this case.[7]

As regards this Court's personal jurisdiction over the Defendant, there is no convincing contention that it is lacking, nor does Defendant provide *any* support. Personal jurisdiction over out-of-state Defendants is governed, again, by 10 *Del. C.* § 3104.[8] In particular, § 3104© lists the various ways in which a party may fall under the proper personal jurisdiction of this Court. § 3104(c)(3) is most relevant to the case at bar, stating that jurisdiction is proper if the party "causes tortious injury in the State by an act...in this State." Plaintiff's allegations, if true, show that Defendant committed repeated acts of sexual abuse in the state of Delaware. This fits squarely within the ambit of the statue.[9]

The Court's analysis does not, however, end here. A determination of the

---

[6] Defendant's Motion to Dismiss, at ¶ 3-4. For the purposes of this Opinion, the Court assumes that this contention is brought under Super. Ct. Civ. R. 12(b)(2).

[7] *See e.g., Schafer v. Wal-Mart Stores, Inc.*, 2001 WL 1456697, at *1 (Del. Super. Ct. Aug. 13, 2001) (court found it had proper subject matter jurisdiction as the Superior Court's jurisdiction "generally includes civil, personal injury suits"). The current lawsuit is, likewise, a civil, personal injury suit, and there is no indication it is outside of the *general* subject matter jurisdiction of this Court.

[8] *See generally, Jeffreys v. Exten,* 784 F.Supp. 146 (D. Del. (1992).

[9] *See also Outokompu Eng'g Enters. v. Kvaerner, Inc.,* 685 A.2d 724, 728 (Del. Super. Ct. 1996) ("a single act may create the minimum contacts necessary to support personal jurisdiction").

appropriate application of personal jurisdiction over out-of-state Defendants, includes not only a statutory grant, but also "whether the exercise of personal jurisdiction would offend due process."[10] Among the factors to be considered in this contemplation of due process are: "the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in effectively resolving controversies and advancing substantive social policies."[11]

In its review of whether the exercise of personal jurisdiction over the Defendant would "offend traditional notions of fair play and substantial justice,"[12] the Court turns to the strikingly similar circumstances found in *Jeffreys v. Exten.*[13] There, as in the case at bar, the Court was faced with a party who was a resident of Maryland, but had "minimum contacts" with Delaware, sufficient to meet the personal jurisdiction standard.[14] The first due process consideration the *Jeffreys* Court contemplated dealt with whether the "burden of litigating this case is not unduly excessive..."[15] The Court held that it was not, as "most of the Defendants and

---

[10] *Jeffreys,* 784 F.Supp. at 151; *see also In re Gen. Motors Shareholder Litig.*, 2005 WL 1089021, at *21 (Del. Ch. May 4, 2005) ("[t]he Court will then engage in a two-step analysis, first determining whether an applicable statute permits the exercise of jurisdiction, and then whether exercising jurisdiction over a particular defendant violates the due process clause...").

[11] *Jeffreys*, 784 F.Supp at 152 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[12] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[13] *Jeffreys*, 784 F.Supp. 146.

[14] *Id.*

[15] *Id.*, at 152.

witnesses are located in the nearby state of Maryland."[16] This is much the same circumstance in the instant matter.

The second concern regards Delaware's, as the forum state's, interest in litigating the case. This interest is self-evident: alleged instances of sexual abuse occurred in this State. Delaware has a powerful stake in both the prosecution and outcome of this matter. To wit, the protection of its own citizens, and further, depending on the outcome, an interest in sending a message to would be out-of-state tortfeasors, that victims of sexual abuse have a recourse in our State against their assailants. Plaintiff's interest in litigating this case in Delaware, her *home* state, is apparent for the same reasons.

The interstate judicial system's interest in obtaining the most efficient resolution of the controversy involves a more tenuous analysis; however, litigating the case in Delaware would still meet these demands. The *Jeffreys* Court, in pondering this due process factor, focused on efficiency. More precisely, the *Jeffreys* Court sought to avoid "multi-state, piece-meal litigation."[17] Reasoning that many of the parties had ties to Delaware, judicial efficiency would be served by prosecution of the case in the State.[18] The instant matter presents the same consideration. The Plaintiff is a Delaware resident; the Defendant purportedly committed the tortious acts in Delaware; and, finally, his co-defendant, Chesapeake, is incorporated in Delaware, operating religious organizations in the State. Additionally, co-defendant

---

[16] *Id.*

[17] *Id.,* at 153.

[18] *Id.*

Columbia, although organized as a D.C. corporation, supervises numerous religious institutions throughout Delaware. Rather than having redundant civil litigation in both Maryland and Delaware, it is far more effective to chose one of these states, and proceed accordingly. With respect to the interstate judicial system's commitment to advancing substantive social policies, the analysis, in this case, is fairly neutral. More importantly, however, "the exercise of jurisdiction [over Defendant] in this instance would not offend traditional notions of fair play and substantial justice."[19]

None of Defendant's thinly formulated arguments, supporting his motion to dismiss, pass muster. Defendant's motion is, thus, **DENIED**.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED**.

/s/ Robert B. Young

J.

RBY/lmc
oc:   Prothonotary
cc:   Counsel
      Mr. Lowell
      Opinion Distribution
      File

---

[19] *Jeffreys*, 784 F.Supp. at 153.